UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GIULIO CRACOLICI,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MARTIN O'MALLEY,<br><br>　　　　Defendant. | Case No.　23-cv-02768-EJD<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 10, 11 |

Plaintiff Giulio Cracolici appeals the Commissioner of Social Security's[1] final decision denying his Supplemental Security Income application. Having considered the parties' cross-motions for summary judgment and the record in this matter, the Court GRANTS Plaintiff's motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment. Therefore, the Court REVERSES the Commissioner's final decision and REMANDS for further proceedings.

## I.     BACKGROUND

### A.     Medical History

Cracolici is a 44-year-old man dealing with several health issues, including morbid obesity, degenerative disc disease, osteoarthritis of the hip, anxiety, and depression. Tr. of Admin. Record ("Tr.") 22, 32, 390, 638, ECF No. 9. In May 2021, Cracolici received bariatric surgery to help control his weight. Tr. 445. The surgery assisted Cracolici with reducing his weight from almost 445 pounds to roughly 200 pounds. Tr. 54–55. Despite losing significant weight,

---

[1] The current Commissioner, Martin O'Malley, is automatically substituted as defendant in place of his predecessor. Fed. R. Civ. P. 25(d).

Case No.: 23-cv-02768-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT

1

1   Cracolici reported that he continued to deal with fatigue and pain. Tr. 54, 57–61.

2       **B.**    **Procedural History**

3   On April 6, 2020, Cracolici filed his application for Social Security benefits. Tr. 20. After the state agency responsible for evaluating Cracolici's application denied his claim initially and on reconsideration, Tr. 86, 107, Cracolici secured counsel and requested a hearing. Tr. 122–128. An ALJ held a hearing on April 6, 2022, and the ALJ issued an unfavorable decision shortly after. Tr. 17–34. The Appeals Council denied review, Tr. 1–6, and Cracolici appealed the Commissioner's final decision to this Court. Compl., ECF No. 1.

## II.   LEGAL STANDARD

Courts review an ALJ's decision to deny Social Security benefits for substantial evidence. *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023). There is substantial evidence when there is "more than a mere scintilla, but less than a preponderance" of evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Put differently, substantial evidence is "such relevant evidence [that] a reasonable person might accept as adequate to support a conclusion." *Id.* If an ALJ's decision is not supported by substantial evidence, courts will reverse. *Glanden*, 86 F.4th at 843. Courts also review an ALJ's decision for legal error. *Id.* If the decision contains a legal error, courts will reverse that decision unless the legal error was harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). An error is harmless only when it is "inconsequential to the ultimate nondisability determination" or when "the agency's path [to its conclusion] may be reasonably discerned" despite the error. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (citations omitted).

## III.   DISCUSSION

Cracolici claims that the ALJ's decision to deny him benefits contains seven different errors that fall into three categories. First, Cracolici argues that the ALJ failed to provide sufficient explanation (1) for the Court to properly review the ALJ's decision as a whole, and (2) to justify discounting Cracolici's subjective testimony about his symptoms. Second, Cracolici contends that the ALJ improperly evaluated the vocational expert's ("VE") testimony in this case

Case No.: 23-cv-02768-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
2

by (3) citing to the wrong job code in the Dictionary of Occupational Titles ("DOT"), (4) failing to reconcile conflicts between the VE's testimony and the DOT, and (5) relying on the DOT despite it being out-of-date. Finally, Cracolici asserts that the ALJ did not properly consider some of his medical conditions by (6) finding that Cracolici's mental impairments are non-severe, and (7) failing to properly account for Cracolici's obesity. Plf.'s Mot. for Summary J. ("Plf. MSJ"), ECF No. 10-1. The Court addresses each alleged error in turn.

### A.     Sufficiency of Explanation

#### 1.     General Explanation Requirements

Cracolici begins by claiming that the ALJ did not explain her decision well-enough to allow for meaningful judicial review. Specifically, Cracolici criticizes the ALJ for "repeatedly just announc[ing] the legal conclusion" followed by a recitation of the relevant rule and facts without analysis. Plf. MSJ 9.

Although the Court agrees that the ALJ could have provided a clearer explanation with more incisive analysis, Social Security law does not require a perfect, or even a good, explanation. While there are heightened explanation requirements for certain steps in an ALJ's reasoning,[2] as a general baseline, an explanation is sufficient if "the agency's path may reasonably be discerned" even if "the agency may have explained it with less than ideal clarity." *Rustamova v. Colvin*, 111 F. Supp. 3d 1156, 1158 (D. Or. 2015) (internal quotation marks omitted) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a)). Here, the ALJ conducted an extensive review of the evidence in the record. *E.g.*, Tr. 26–31. Despite Cracolici's concerns about the relatively meager analysis connecting this evidence to the standard for disability, Cracolici does not identify how this alleged deficiency creates any ambiguity in the ALJ's reasoning that prevents the Court from meaningfully reviewing the ALJ's decision. The ALJ's decision provides enough detail for the Court to assess whether the

---

[2] For example, ALJs must give higher levels of explanation when discounting a claimant's subjective testimony and when evaluating medical opinions. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1197–98 (9th Cir. 2024) (subjective testimony); 20 C.F.R. § 416.920c(b)(2) (evaluating medical opinions).

Case No.: 23-cv-02768-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
3

cited evidence supports her conclusion, so the ALJ adequately explained her decision.

### 2. Explanation for Discounting Subjective Testimony

Apart from Cracolici's general challenge to the sufficiency of the ALJ's explanation, Cracolici also specifically claims that the ALJ failed to sufficiently explain her decision to discount Cracolici's subjective testimony. In dealing with a claimant's subjective testimony, an ALJ must provide an explanation clearing a higher bar than the baseline requirement discussed above. Namely, when a claimant has medically supported impairments that could cause his symptoms, the ALJ must provide "specific, clear, and convincing reasons" for "reject[ing] the claimant's testimony about the severity of those symptoms." *Ferguson v. O'Malley*, 95 F.4th 1194, 1197–98 (9th Cir. 2024) (quoting *Brown-Hunter*, 806 F.3d at 488–89). This requires the ALJ to "show [her] work" by providing an explanation "clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

At the outset, the Court notes that Cracolici's argument has two parts. Cracolici first argues that the ALJ provided no explanation at all for discounting his subjective testimony about mental impairments. Cracolici then argues that the ALJ provided a deficient explanation for discounting his subjective testimony about physical impairments. Plf. MSJ 15–18.

The Court can quickly set aside Cracolici's criticism regarding his mental impairment testimony because Cracolici never gave such testimony. Cracolici claims he offered such testimony by testifying that his conditions caused him to miss appointments and prevented him from going out with friends, *id.* (citing Tr. 66–67), and when his attorney incorporated Cracolici's legal brief into the opening statement at hearing. *Id.* at 15 (citing Tr. 47). In the full context of Cracolici's testimony, Crocolici was testifying that his physical impairments, not his mental impairments, prevented him from participating in social activities. *See* Tr. 66–67. And neither legal briefs nor an attorney's opening statement are testimony. *DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, 671 F. Supp. 3d 1105, 1134 (S.D. Cal. 2023) (quoting *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017)). Thus, there was no mental impairment testimony for the ALJ to discount.

Case No.: 23-cv-02768-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
4

Cracolici is correct, though, that the ALJ's explanation for discounting his physical impairment testimony was inadequate. The Ninth Circuit's binding opinion in *Brown-Hunter v. Colvin*, 806 F.3d 487, controls on this issue and compels the Court to remand the ALJ's decision. In *Brown-Hunter*, the ALJ made the conclusory declaration that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* at 493. Then, the ALJ merely summarized the medical evidence before paraphrasing her earlier conclusion, stating again that "the functional limitations from the claimant's impairments were less serious than she has alleged." *Id.* The Ninth Circuit held that the ALJ's explanation failed to satisfy the specific, clear, and convincing standard because it did not specifically identify portions of the claimant's testimony that were allegedly inconsistent with the record, and the explanation did no more than summarize the medical evidence. *Id.* at 494. Although a court might have been able to draw reasonable inferences from the summarized evidence, the Ninth Circuit explained that doing so results in the court improperly making credibility determinations in place of the ALJ. *Id.* (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). Rather than allowing *a court* to infer the ALJ's reasoning, the specific, clear, and convincing standard requires *the ALJ* to do the work of laying out her reasoning by linking specific testimony to specific evidence undermining that testimony. *Id.* That way, courts can review the ALJ's actual reasoning instead of speculating on what that reasoning may have been. *Id.*

The ALJ deciding Cracolici's case did exactly what *Brown-Hunter* prohibits. The ALJ made a conclusory statement rejecting Cracolici's testimony nearly identical to the conclusory declaration in *Brown-Hunter*:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 26. The ALJ then summarized Cracolici's medical evidence without tying specific evidence to

Case No.: 23-cv-02768-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
5

specific testimony. Tr. 26–27. Finally, the ALJ concluded by reiterating her initial, conclusory statement: "The claimant's own subjective reports of symptom intensity, persistence, and limiting effects do not support his allegations of disabling limitations." Tr. 29. Although unlike the ALJ in *Brown-Hunter*, the ALJ in this case also offered a brief summary of Cracolici's daily activities that purportedly undermined his subjective testimony, the ALJ here still failed to connect specific daily activities to the specific testimony that was supposedly undermined. Tr. 30.

Because the ALJ's explanation for rejecting Cracolici's subjective testimony mirrors the explanation that the Ninth Circuit rejected in *Brown-Hunter*, remand is required on this basis.

### B.      Vocational Expert Testimony

#### 1.      Erroneous DOT Code

Cracolici argues that the ALJ committed reversible error by citing to the wrong DOT code when determining whether there are a significant number of jobs in the national economy that Cracolici could perform. Plf. MSJ 3–4. Specifically, the ALJ found that Cracolici could work as an Order Clerk, Food and Beverage, identifying that job as DOT 209.587-010. Tr. 32. The ALJ based this finding on the VE's testimony, who also identified the Order Clerk job using the same DOT code. Tr. 69. As the Commissioner concedes, that code is incorrect and instead refers to the Addresser job. Def.'s Cross-Mot. for Summ. J. ("Def. MSJ") 1, ECF No. 11. The correct code for the Order Clerk job is DOT 209.567-014. *See* 1991 WL 671794.

Although the Commissioner admits error, he contends that using the wrong DOT code is harmless. Def. MSJ 1–2. Cracolici disagrees, claiming that using the wrong DOT code makes it unclear whether the job numbers given by the VE were for the Order Clerk job or for the Addresser job. Plf.'s Reply in Support of MSJ ("Plf. Reply") 2–3, ECF No. 12. Although using the wrong DOT code might create ambiguity in isolation, courts must assess harmlessness "in the context of the record as a whole." *Hurn v. Saul*, 798 F. App'x 976, 978 (9th Cir. 2019) (citing *Molina*, 674 F.3d at 1115–22); *see also Noriega v. Comm'r of Soc. Sec. Admin.*, 657 F. Supp. 3d 1219, 1225 (D. Ariz. 2023) (same). Here, the VE expressly referred to the Order Clerk job, not to the Addresser job, Tr. 69, and the erroneous DOT code only differs from the correct DOT code by

1   two digits. Altogether, this record supports the conclusion that the VE simply made a mistake

2   when reciting the DOT code, but that his testimony about the availability of Order Clerk jobs was

3   otherwise correct. *See Monta v. Saul*, 776 F. App'x 473, 475 (9th Cir. 2019) ("The ALJ's

4   typographical error in a job's Dictionary of Occupational Titles number was harmless."); *Morales*

5   *v. Astrue*, 300 F. App'x 457, 458 (9th Cir. 2008) (similar); *Nelson v. Colvin*, No. 14-cv-6460, 2015

6   WL 4747317, at *6 (C.D. Cal. Aug. 11, 2015) (similar).

7         Even if it were ambiguous whether the VE's testimony was referring to available Order

8   Clerk jobs or Addresser jobs, the DOT code error would still be harmless. The VE testified, and

9   the ALJ accepted, that there were three job titles Cracolici could fill in the national economy:

10  Document Preparer, Order Clerk, and Marker. Tr. 32, 69–70.   The VE and ALJ both found that

11  there were 17,000, 63,000, and 33,000 jobs available for each title respectively (at the sedentary

12  level) in the national economy. *Id.* So, excluding the 63,000 Order Clerk jobs completely, there

13  would still remain 50,000 jobs available to Cracolici in the national economy.[3]  That number of

14  available jobs is still sufficient to support the ALJ's finding that Cracolici is not disabled.

15  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014) (finding that 25,000 jobs in

16  the national economy is sufficient for a finding of non-disability).

17        **2.**     **Conflict with the DOT**

18        Next, Cracolici argues that the ALJ failed to follow Social Security rules requiring ALJs to

19  "elicit a reasonable explanation" for "apparent unresolved conflict between VE [] evidence and the

20  DOT." SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). Cracolici claims that the VE

21  in his case gave testimony that conflicted with the DOT's information about the Marker job. Plf.

22  MSJ 5–6. Namely, the DOT classifies the Marker job at the light-work level while the VE

23  testified that there were 33,000 Marker jobs at the sedentary level. Tr. 69–70.

24        To begin, there is no conflict between the VE's testimony and the DOT. The VE testified,

25  consistent with the DOT, that the Marker job is classified as light work. *Id.* The VE then further

---

[3] Cracolici also challenges the availability of these 50,000 jobs. But as the Court explains below, those challenges are meritless.

Case No.: 23-cv-02768-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
7

explained that, within the entire group of Marker jobs, there is a smaller number of Marker jobs that could be performed at the sedentary level. *Id.* There is nothing contradictory about a larger set of jobs generally performed at the light exertional level containing a subset of jobs that could be performed at the sedentary level. In arguing conflict, Cracolici is really taking issue with the VE providing vocational evidence that extends beyond the DOT. But VEs are authorized to do so. *Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (VEs "may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling'") (quoting SSR 00-4p). And there is good reason for allowing VEs to do so: while the DOT is extensive, it is not all-encompassing.

Even assuming Cracolici were correct that the VE's testimony about sedentary Marker jobs created a conflict with the DOT, that is still not grounds for reversal because the ALJ did what she was supposed to in such circumstances. Upon receiving that supposedly conflicting testimony from the VE, the ALJ initiated the following colloquy:

> ALJ: Okay. So, and your – so your testimony is there would be approximately 33,000 marker jobs that would, could be basically performed at the sedentary level, sitting six, at least six hours out of an eight-hour workday?
>
> VE: Yes, Your Honor.
>
> ALJ: And what is that testimony based on?
>
> VE: That's based on my experience and on vocational resources developed by professionals in my industry, Your Honor.

Tr. 70. As this colloquy shows, the ALJ recognized the potential discrepancy between Marker jobs at the light-work and sedentary levels and inquired about how the VE reached his conclusion about sedentary Marker jobs. Later, the ALJ also specifically asked the VE whether his testimony was consistent with the DOT. Tr. 71. In both the quoted colloquy and in response to the ALJ's question about consistency with the DOT, the VE explained that his testimony was based on his experience and vocational resources. Tr. 70–71. That is sufficient to justify the VE's testimony. *See Ford v. Saul*, 950 F.3d 1141, 1158 (9th Cir. 2020) ("A vocational expert's recognized

Case No.: 23-cv-02768-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
8

1  expertise provides the necessary foundation for his or her testimony and no additional foundation
2  is required.") (cleaned up).

### 3. Use of the DOT

As a final challenge to the VE's testimony, Cracolici broadly argues that the VE's proffered job numbers must be wrong because the DOT is so old as to be obsolete. Plf. MSJ 6–9. The Court shares Cracolici's concerns about whether the DOT truly reflects the jobs available in a modern economy. But those concerns do not justify reversing the ALJ's decision because Cracolici has forfeited his challenge to the VE's job numbers. A claimant who is represented by counsel forfeits any job numbers challenge when he "fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017). Cracolici was represented by counsel at his hearing before the ALJ. Tr. 42. When Cracolici's counsel cross-examined the VE, counsel only asked whether additional work limitations would be work-preclusive; counsel did not challenge the job numbers that the VE had earlier provided to the ALJ. Tr. 71–73. Accordingly, Cracolici cannot raise a job numbers challenge now.

## C. Consideration of Specific Medical Conditions

### 1. Severity of Mental Impairments

Cracolici asserts that the ALJ wrongly found his mental impairments to be non-severe at step two because the ALJ failed to acknowledge high PHQ-9 and GAD-7 scores indicating that Cracolici was dealing with severe depression and moderately severe anxiety. Plf. MSJ 11–14. From Cracolici's perspective, the ALJ's failure to acknowledge the PHQ-9 and GAD-7 scores constitutes impermissible cherry-picking of evidence. *Id.*

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (alteration in original) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). An impairment is non-severe only if substantial evidence clearly establishes that the impairment "has no more than a minimal effect on an individual's ability to work." *Id.* at 686–87 (quoting *Smolen*, 80 F.3d at 1290). In the mental impairment

Case No.: 23-cv-02768-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
9

context, 20 C.F.R. § 416.920a dictates the process for evaluating severity. Under this regulation, the ALJ applies a two-step process to evaluate mental impairments. First, the ALJ must determine whether a claimant has medically determinable mental impairments. 20 C.F.R. § 416.920a(b)(1). Second, the ALJ must assess whether the impairments are severe by considering the claimant's functional limitations in four areas, sometimes known as the paragraph B criteria: (1) ability to understand, remember, or apply information; (2) ability to interact with others; (3) ability to concentrate, persist, or maintain pace; and (4) ability to adapt or manage oneself. 20 C.F.R. § 416.920a(b)(2), (c)(3); *see also Mary G. v. Kijakazi*, No. 23-cv-01972, 2023 WL 6304853, at \*4 (C.D. Cal. Sept. 27, 2023). If the claimant's functional limitations in those four areas are "mild" or "none," the claimant's mental impairments are non-severe. 20 C.F.R. § 416.920a(d)(1).

Within this framework, Cracolici's PHQ-9 and GAD-7 scores are hardly the smoking-gun evidence of severity that he makes them out to be. The fact Cracolici's anxiety and depression is "severe" on the PHQ-9 and GAD-7 scales does not mean that his anxiety and depression are "severe" for disability claim purposes. Rather, severity for disability claims depends on the paragraph B criteria. 20 C.F.R. § 416.920a(b)(2), (c)(3). Cracolici's PHQ-9 and GAD-7 scores "only indicate what Plaintiff (and the ALJ) already note[d], that [he] suffers from major depressive disorder and anxiety; they do not speak to whether or not Plaintiff has . . . limitations in the areas required to satisfy paragraph B." *Mary G.*, 2023 WL 6304853, at \*5 (quoting *Cardona v. Kijakazi*, No. 20-cv-266, 2022 WL 1214707, at \*12 (S.D. Cal. Apr. 25, 2022)); *see also* Tr. 22 (finding that anxiety and depression are among Cracolici's medically determinable impairments). Accordingly, the ALJ did not need to cite the PHQ-9 or GAD-7 when assessing mental impairment severity because those scores would not have contributed anything new to her analysis or decision. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence.") (internal quotation marks and citations omitted).

The ALJ did not otherwise cherry-pick evidence when evaluating Cracolici's mental impairments, either. When evaluating the four paragraph B criteria, the ALJ expressly cited to

Case No.: 23-cv-02768-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
10

evidence cutting against her severity determination, such as Cracolici's testimony that he had difficult concentrating due to pain and exam notes showing that Cracolici appeared disheveled at several appointments. Tr. 24. The ALJ then provided substantial evidence explaining why she found that this evidence did not establish functional impairments in the third paragraph B criterion (concentration) and only established mild impairments in the fourth paragraph B criterion (adapting and managing). Namely, the ALJ observed that Cracolici demonstrated the ability to concentrate by actively participating in the hearing without distraction. *Id.* And Cracolici showed the ability to manage himself by caring for his personal needs, performing daily activities, and declining psychological treatment. *Id.*

The ALJ also offered substantial evidence explaining why Cracolici didn't have limitations in first paragraph B criterion (understanding, remembering, or applying information), and why Cracolici didn't have limitations in the second paragraph B criterion (interacting with others). As the ALJ noted, Cracolici repeated received good mental status exams, indicating the ability to cooperate with others and to reason and apply information. *Id.* The ALJ also observed that Cracolici exhibited a good memory during testimony because Cracolici testified about information going back fifteen years. *Id.*

Cracolici weighs and interprets that evidence differently than the ALJ did. For one, Cracolici believes that the ALJ's cited evidence is irrelevant because that evidence doesn't connect to his ability to perform "job tasks." Plf. MSJ 13–14. And Cracolici claims it was improper for the ALJ to fault him for refusing psychological treatment because the reason for Cracolici's refusal is poverty. *Id.* at 14. Both criticisms miss the mark. ALJs assess the severity of mental impairments not by considering how those impairments affect the ability to perform "job tasks," but rather by considering how those impairments affect the four paragraph B criteria. 20 C.F.R. § 416.920a(b)(2), (c)(3). And nothing in the record implies that Cracolici was unable to afford psychological treatment. Although Cracolici testified that he could not pay for a $3,000 prescription, Tr. 58, the record is replete with evidence showing Cracolici taking other prescription medications and repeatedly seeking treatment for his physical ailments, including surgery and

Case No.: 23-cv-02768-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
11

testing.  *E.g.*, Tr. 353–56, 384–91, 445, 479–80, 520–39.  Given Cracolici's extensive physical treatment history, there was no reason for the ALJ to believe that poverty may have played a role in Cracolici's failure to seek psychological treatment, especially when Cracolici did not specifically claim that poverty affected his ability to seek psychological treatment during his hearing before the ALJ.

More fundamentally, Cracolici's interpretation of the evidence does not justify reversing the ALJ since courts may not "may not reweigh the evidence or substitute our judgment for that of the ALJ."  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021).  So long as the ALJ's interpretation of the evidence is rational, a court must uphold the ALJ's decision even if there are alternative rational interpretations inconsistent with the ALJ's final decision.  *Id.* at 1115–16 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)).  It is the ALJ who "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," not the Court or the claimant.  *Id.* at 1115 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The ALJ's view of the evidence on the paragraph B criteria is rational, so the Court cannot reverse the ALJ's decision even if it believed that a better interpretation favors Cracolici.

### 2. Obesity

Lastly, Cracolici asserts that the ALJ failed to consider his obesity altogether when denying Social Security benefits.  That is simply not true.  The ALJ explicitly found that Cracolici's morbid obesity was a severe impairment.  Tr. 22.  And later, when the ALJ was considering Cracolici's residual functional capacity, the ALJ provided an extensive discussion of Cracolici's obesity and repeatedly acknowledged Cracolici's obesity and weight during her review of the medical evidence.  Tr. 26–29.

To the extent Cracolici is claiming that the ALJ's explanation regarding his obesity is insufficient under SSR 19-2, 2019 WL 2374244 (S.S.A. May 20, 2019), the Court finds no merit in that argument.  As noted above, an ALJ's explanation meets the low bar for sufficiency when the ALJ describes her reasoning with "sufficient specificity and clarity to allow for meaningful

review." *Gomez-Perez*, 2017 WL 810275, at *2 (cleaned up).  In this case, the ALJ cleared that low bar by acknowledging the medical evidence of obesity and recognizing that some of Cracolici's symptoms were "exacerbated by his superobese body habitus."  Tr. 29; *see Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) (acknowledgement of obesity and its effects on symptoms is sufficient).  In any case, Cracolici's obesity argument fails because he does not "point[] to any evidence of functional limitations due to obesity" that "would have impacted the ALJ's analysis" but that the ALJ failed to consider.  *Burch*, 400 F.3d at 683.

## IV.   CONCLUSION

Although most of Cracolici's challenges to the ALJ's denial of Social Security benefits fail, the Court finds that the ALJ did not properly explain her decision to discount Cracolici's subjective testimony about his physical symptoms.  Accordingly, the Court GRANTS Cracolici's motion, DENIES the Commissioner's cross-motion, REVERSES the Commissioner's decision, and REMANDS for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: August 16, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 23-cv-02768-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
13